1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| DELMAR SILVERIO CHUIL CHULIN, | Case No. 21-cv-00016-LB |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS** |
| LAURA B. ZUCHOWSKI, et al., | Re: ECF No. 25 |
| Defendants. | |

**INTRODUCTION**

The plaintiff is a citizen of Mexico who entered the United States unlawfully in 2003 at age eighteen. In 2012, the federal government began removal proceedings, charging him with inadmissibility because he was a noncitizen present in the U.S. without permission. The plaintiff subsequently was a victim of an aggravated assault and cooperated with the police in their investigation. That cooperation allowed him to petition in 2016 for U nonimmigrant status, called a U visa, by submitting Form I-918, Petition for U Nonimmigration Status (known as a U Visa Petition).[1] 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14(b). The petition was his only ground for relief in his removal proceedings. A statutory prerequisite for a U visa is being admissible into the

---

[1] First. Am. Compl. (FAC) – ECF No. 23 at 5–8 (¶¶ 19–20, 227–35). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

1   United States. 8 C.F.R. § 214.1(a)(3)(i). Because the plaintiff is not admissible, his 2014 petition for

2   a U visa included Form I-192, Application for Advance Permission to Enter as a Nonimmigrant

3   (known as a Waiver Application), which allows an applicant to obtain a waiver of inadmissibility.[2]

4   The plaintiff met all elements for the U visa except the requirement of admissibility. USCIS denied

5   the application to waive admissibility and, as a result, denied the U visa.

6      In this lawsuit, the plaintiff challenges the denials as arbitrary and capricious in violation of

7   the Administrative Procedures Act (APA) and his Fifth Amendment right to due process under the

8   U.S. Constitution, generally on the ground that USCIS wrongly considered information in police

9   reports about his arrests even though the D.A. declined to prosecute him. The government moved

10  to dismiss the claims under Federal Rule of Civil Procedure 12(b)(1), contending that its

11  discretionary decision to waive inadmissibility under 8 U.S.C. § 1182(a) is nonreviewable, and

12  that as a result, the plaintiff is not eligible for the U visa.[3] 8 U.S.C. §§ 1182(d)(3)(A)(ii) &

13  1182(d)(14); 8 C.F.R. § 212.17(b)(1). The court denies the motion to dismiss on the ground that

14  the plaintiff plausibly pleaded legal and due-process claims about USCIS's consideration of the

15  evidence. Thus, the court can review an otherwise unreviewable discretionary decision.

16

17                                    **STATEMENT**

18     The plaintiff was born in Mexico to poor Mayan parents, immigrated here unlawfully in 2003 at

19  age 18, and works multiple jobs to support his family in Mexico and (now) his three-year-old child.[4]

20     In 2012, the plaintiff was arrested and charged with rape and attempted sodomy. He pled not

21  guilty, maintained his innocence, and said that he was in a relationship with his accuser (who

22  denied knowing him). The San Francisco D.A. dismissed the charges in June 2012.[5]

23     In January 2012, the U.S. Department of Homeland Security initiated removal proceedings

24  against the plaintiff by issuing a Notice to Appear, charging him with inadmissibility as a

25  _____

26  [2] Decisions, Exs. A & B to *id.* – ECF No. 23-1 at 4, 7.

    [3] Mot. – ECF No. 25-2 at 5–6.

27  [4] FAC – ECF No. 23 at 5–6 (¶¶ 19–20).

28  [5] *Id.* at 6 (¶¶ 23–24).

United States District Court
Northern District of California

1    noncitizen present in the U.S. without permission.[6] 8 U.S.C. § 1182(a)(6)(A)(i). After reviewing

2    the police reports for the rape charges and hearing the plaintiff's testimony, an immigration judge

3    (IJ) ordered the plaintiff's release on a $9,000 bond, finding that he was not a flight risk or a

4    danger to the community.[7]

5        In 2013, the D.A. charged the plaintiff with misdemeanor domestic violence against his girlfriend

6    and later dismissed the charges.[8]

7        The plaintiff thus has no criminal convictions.

8        In 2014, the plaintiff was a victim of an aggravated assault: his assailants threatened him with a

9    stun gun and a knife, cut him on his cheek, and stole his cellphone. He cooperated with the SFPD in

10   their investigation, giving a statement to the police and identifying one assailant. As a result, he

11   became paranoid and depressed and had waking nightmares. He applied in August 2016 for the U

12   visa (Form I-918) and submitted his Waiver Application (Form I-192).[9] On March 22, 2017, he

13   moved for "administrative closure," or alternatively a continuance, of his removal proceedings

14   pending USCIS's adjudication of his U visa application. The IJ denied the motions "in apparent

15   reliance on nothing more than misleading representations made by ICE counsel with regard to his

16   'criminal history'"[10] and ordered him removed on the ground that he was inadmissible because he

17   entered the United States without inspection. 8 U.S.C. § 1182(a)(6)(A)(i). He appealed the decision

18   to the BIA, which affirmed. He petitioned for review to the Ninth Circuit. That petition is pending.[11]

19       USCIS issued its final denials of his U Visa Petition and Waiver Application on August 12,

20   2019.[12] (The plaintiff had no grounds for any other relief before the IJ and thus raised none.[13]) The

21   following paragraphs summarize the denials.

---

23   [6] *Id.* at 7 (¶ 27).

     [7] *Id.* at 6–7 (¶¶ 25–26).

24   [8] *Id.*

25   [9] *Id.* at 13–14 (¶¶ 58–64).

26   [10] *Id.* at 8 (¶ 37).

     [11] *Id.* at 8–9 (¶¶ 34–41).

27   [12] *Id.* at 17 (¶ 78).

28   [13] *Id.* at 8 (¶ 36).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   USCIS recognized that the plaintiff satisfied the criteria for a U visa except for the criterion of

2   admissibility: he was the victim of a qualifying crime (felony assault), he suffered substantial

3   physical or mental abuse from the crime, he had information about the crime, and he provided

4   information to the police investigating the crime.[14] U.S.C. § 1101(a)(15)(U)(i)(I–III). He admitted

5   that he was inadmissible and submitted his Waiver Application to waive the requirement of

6   admissibility. 8 U.S.C. § 1182(a)(6)(A).[15] In support of the application, he described his

7   background, including his inability to support his family in Mexico despite working twelve-to-

8   thirteen-hour days there, six days a week, starting at age fourteen. He described his work history in

9   the U.S. and included reference letters from employers and a colleague about his good character.

10   He identified his 2012 and 2013 arrests and provided a declaration about his innocence and the

11   same of the arrests. He described his dreams, including saving money to buy a home.[16]

12   In October 2013, USCIS asked for documentation about the arrests, including police reports,

13   court documents, the penalties, and the dispositions. It asked for other evidence relevant to the

14   waiver determination, such as evidence of rehabilitation, reasons for staying in the U.S., and

15   mitigating factors (family ties, financial impact on others, and contributions to the community). It

16   asked for an "explanation in his own words" about the circumstances "surrounding the act or

17   conviction that prompted the need for a waiver request," loss of access to the U.S. criminal justice

18   system as a result of his victimization, and any physical, medical, mental-health or social services

19   that he needed that were unavailable in his home country. The plaintiff submitted all information

20   except the police reports, which the police would not give him.[17]

21   On May 18, 2018, USCIS denied the U Visa Application, finding that he met all criteria for

22   the visa except inadmissibility. In a separate five-page decision, it denied the Waiver Application.

23

24   [14] FAC – ECF No. 23 at 10–11 (¶¶ 45–48) & 13 (¶¶ 58–62); 5/28/2019 U Visa Decision, Ex. A to *id.* at

25   4–5.

    [15] FAC – ECF No. 23 at 11 (¶ 49).

26   [16] *Id.* at 13–14 (¶¶ 63–64).

27   [17] *Id.* at 14–15 (¶¶ 67–68); 8/12/2019 Waiver Recons. Decision, Ex. D to *id.* – ECF No. 23-1 at 18–19
    (procedural history). The USCIS asked for evidence of substantial physical or mental abuse for the U

28   Visa Application. FAC – ECF No. 23 at 14 (¶ 67).

1    The first two pages recite the legal standard and the procedural history. Page three lists four

2    arrests. The first two reflect the 2012 arrest for the rape charges: one reflecting an arrest on

3    January 4, 2012 by the Redwood City Sheriff's Office, and one a January 5, 2012 arrest by the San

4    Francisco Sheriff's Office. (The first agency does not exist.) Both show the disposition: dismissal.

5    The fourth is the misdemeanor domestic-violence charges and the disposition: dismissal. (Nothing

6    in the decision shows that that they were misdemeanors.) The third is the ICE arrest that followed

7    the government's initiation of removal proceedings and preceded the plaintiff's release on bond.[18]

8          The rest of the decision explains the reasons for denying a waiver.

9          The plaintiff had "negative equities," including entering the United States without removal and

10   the IJ's subsequent removal order. He had arrests for "multiple criminal offenses." The USCIS

11   decisionmaker described the charges: rape, assault with intent to commit rape, and attempt to

12   commit sodomy on an unconscious victim. She summarized the evidence, including his DNA on a

13   vaginal swab and the alleged victim's identification of him in a photo lineup. She characterized his

14   "personal statement . . . [that] the alleged victim was his girlfriend for nine years . . . [as] 'a

15   discrepancy to the record.'" The discrepancies were that (1) "the victim . . . [said he was] only an

16   acquaintance and [she] did not know him well enough to even know his real name," and (2) "she

17   encountered [him] the night of the assault at a bar[,] [s]he had a few drinks, [] started to feel

18   unusually ill . . . [and] awoke after being sexually assaulted, and ran back to her home." "USCIS

19   was unable to determine why the [rape] charges were dismissed, but the confirmation of the DNA

20   evidence, and [the plaintiff's] identification by the witness is a negative equity."[19]

21         The decisionmaker then said, "USCIS holds that[,] while it 'will not go beyond a record of

22   conviction to assess an alien's ultimate guilt or innocence, inquiry may be had into the

23   circumstances surrounding the commission of the crime in order to determine whether a favorable

24   exercise of discretion is warranted."[20] She continued, "In this respect, USCIS will not reassess an

25

26   ───────────────

27   [18] 5/18/2018 Waiver Decision – Ex. B to *id.* – ECF No. 23-1 at 7–9.

     [19] *Id.* at 10.

28   [20] *Id.* (quoting *Matter of Edwards*, 20 I & N Dec. 191 (BIA 1990)).

United States District Court
Northern District of California

1    individual's guilt or innocence to determine statutory eligibility for a waiver or to determine

2    whether an individual's criminal history renders the individual inadmissible under any of the

3    criminal grounds in section 212 of the INA." But, she said, in deciding whether to exercise

4    discretion, "USCIS holds that:

> When an alien's conduct results in his having contact with the criminal justice system or
> being placed in criminal proceedings, the nature of those contacts and the stage to which
> those proceedings have progressed should be taken into account and weighed accordingly.
> Hence, the probative value of and corresponding weight, if any, assigned to evidence of
> criminality will vary according to the facts and circumstances of each case and the nature
> and strength of the evidence presented.[21]

9    Then, without identifying that it was a misdemeanor, the decisionmaker discussed the

10   plaintiff's "arrest for domestic violence . . . [in] 2013 related to a battery against your spouse.

11   Once again, the charges were dismissed. You also violated an emergency protective order issued

12   by San Francisco law enforcement." She continued, "Your arrest for domestic violence establishes

13   a pattern of behavior that is a serious public safety risk. Your multiple arrests establish[] a pattern

14   of behavior that is a serious public safety risk. Your multiple arrests for egregious crimes

15   establish[] a pattern of behavior that poses a serious threat to the safety of the United States."

16   USCIS requested court documents and police reports relating to these arrests, but only received

17   the final dispositions for the arrests."[22]

18   Then, she "weigh[ed] these adverse factors against [the plaintiff's] reasons for wishing to

19   remain in the United States and the other positive equities," including his "personal statement,

20   affidavits, employment documentation, [] other court documents," his desire to receive mental-

21   health counseling that is more available here, his access to better law-enforcement resources here,

22   and his need to care for his family and pregnant girlfriend." She denied his Waiver Application on

23   the ground that "the seriousness of the crimes . . . combined with his disregard for the immigration

24   and criminal laws . . . establish[ed] a pattern of behavior that is detrimental to the security of the

25   United States." She reiterated, "The favorable factors evident in the record do not overcome your

26

27   [21] *Id.* (citing *Matter of Thomas*, 21 I & N Dec. 20 (BIA 1995)).

28   [22] *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    adverse criminal and immigration history."[23]

2         On June 20, 2018, the plaintiff filed a motion to reconsider, which USCIS granted.[24] On

3    August 12, 2019, in two separate letters, the same decisionmaker again denied both applications.[25]

4    In denying the Waiver Application, she acknowledged that in January 2012, there was only one

5    criminal arrest and one transfer to ICE custody (not three separate arrests) and withdrew "any

6    consideration of factual information contained only in briefing before the Immigration Judge and

7    not evidence in the record of proceeding." She acknowledged that the plaintiff denied the

8    allegations in the police report about the alleged rape and that the District Attorney moved to

9    dismiss the felony charges. She also acknowledged that the later charges were misdemeanors and

10   that the district attorney dismissed the charges. She then held that "the seriousness of your past

11   actions and encounters with law enforcement, the seriousness of you paying a coyote to get you

12   into the United States without inspection, and additional immigration history to include . . . the

13   March 22, 2017 decision where the IJ . . . ordered you removed from the United States" did not

14   outweigh the positive equities: being a hard and dedicated worker and a dependable colleague, and

15   his desire to provide for his girlfriend and son." In conclusion, she said in part, "USCIS remains

16   concerned by the serious nature of the charges brought against you in 2012 and 2013 . . . and the

17   final order of removal issued in 2017. The record indicates a pattern of disregard for U.S. law, as

18   well as a potential risk to the safety of others."[26]

19        It is undisputed that the decisionmaker relied on the police report.[27] It is part of the A file.

20   According to the government, USCIS had it at the bond hearing, and it would have been given to

21   the plaintiff. According to the plaintiff, he did not have it over five years later (shown by his

22   inability to obtain it from the SFPD), and USCIS relied on it without disclosing it to him or giving

23

24   _____

     [23] *Id.* at 10–11.

25   [24] FAC – ECF No. 23 at 17 (¶ 76).

26   [25] 8/12/2019 U Visa Recons. Decision, Ex. C to *id.* – ECF No. 23-1 at 14–15; 8/12/2019 Waiver
     Recons. Decision, Ex. D to *id.* – ECF No. 23-1 at 18, 21–23.

27   [26] 8/12/2019 Waiver Recons. Decision, Ex. D to *id.* – ECF No. 23-1 at 17–23.

28   [27] *Id.* at 19. The parties made this point explicitly at the August 26, 2021 hearing.

1   him an opportunity to rebut it. During the waiver proceedings, the attorney told the decisionmaker,

2   "My client is willing to respond to any specific inquiries as to the information that appears on that

3   report" and then described the anxiety, stress, and depression that the plaintiff experienced

4   because of the false accusations."[28]

5   "On information and belief, Plaintiff sought further reconsideration by the USCIS, but in

6   January 2020 the agency declined to reconsider its August 2019 decisions.[29] The plaintiff then

7   sued the decisionmaker, the acting director of USCIS, and USCIS, claiming that the decisions

8   were arbitrary and capricious in violation of the APA and a violation of his Fifth Amendment right

9   to due process.[30] The court held a hearing on the defendant's motion to dismiss on August 26,

10   2021. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[31]

11

12   **LEGAL STANDARDS**

13   **1. Rule 12(b)(1)**

14   A complaint must contain a short and plain statement of the ground for the court's jurisdiction.

15   Fed. R. Civ. P. 8(a)(1). The plaintiffs have the burden of establishing jurisdiction. *Kokkonen v.*

16   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La*

17   *Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

18   A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227

19   F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are

20   themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's

21   allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv.*

22   *v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). This is a facial attack. The court thus "accept[s] all

23

24

25   [28] *Id.*

26   [29] FAC – ECF No. 23 at 21 n.3.

27   [30] *Id.* at 22–25 (¶¶ 97–107). The initial complaint had one APA claim, and the defendants moved to dismiss. Compl. – ECF No. 1; Mot. – ECF No. 14. The parties then agreed that the plaintiff would file an amended complaint, mooting the motion. Stip. – ECF No. 21; Orders – ECF Nos. 22, 24.

28   [31] Consents – ECF Nos. 8 & 11.

United States District Court
Northern District of California

1    allegations of fact in the complaint as true and construe[s] them in the light most favorable to the

2    plaintiff[]." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

3        Dismissal of a complaint without leave to amend should be granted only if the jurisdictional

4    defect cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048,

5    1052 (9th Cir. 2003).

6

7    **2.  Rule 12(b)(6)**

8        A complaint must contain a "short and plain statement of the claim showing that the pleader is

9    entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

10   which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

11   complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the

12   grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

13   recitation of the elements of a cause of action will not do. Factual allegations must be enough to

14   raise a claim for relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).

15       To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which

16   when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

17   U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

18   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

19   defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a

20   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

21   unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

22   merely consistent with a defendant's liability, it stops short of the line between possibility and

23   plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

24       If a court dismisses a complaint, it should give leave to amend unless the "pleading could not

25   possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co*.,

26   848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**ANALYSIS**

2       The APA does not apply "to the extent that statutes preclude judicial review; or agency action is

3   committed to agency discretion by law." 5 U.S.C. § 701(a). Also, "[n]o court shall have jurisdiction

4   to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland

5   Security the authority for which is specified under this subchapter to be in the discretion of the

6   Attorney General or the Secretary of Homeland Security. . . ." 8 U.S.C. § 1252(a)(2)(B)(ii);

7   *Solorzano v. Sessions*, No. 18-CV-00025-JCS, 2018 WL 1811792, at \*4 (N.D. Cal. Apr. 17, 2018).

8       Two statutory provisions give USCIS the discretionary authority to waive the ground of

9   inadmissibility: one generally applicable to nonimmigrants and one specific to applicants for U

10  visas. 8 U.S.C. §§ 1182(d)(14) (general) & (d)(3)(a)(ii) (U visa applicant); *Solorzano*, 2018 WL

11  1811792, at \*4. The parties thus agree that the court cannot review USCIS's discretionary decision

12  to deny the Waiver Application (and the resulting denial of the U visa based on inadmissibility)

13  unless there are "constitutional claims or questions of law raised upon a petition for review filed

14  with an appropriate court of appeals in accordance with this section."[32] 8 U.S.C. § 1252(a)(2)(D);

15  *Solorzano*, 2018 WL 1811682, at \*4.

16      The court has jurisdiction to review the application of law to facts, and may consider whether

17  there is a colorable constitutional claim. *Torres-Aguilar v. I.N.S.,* 246 F.3d 1267, 1270–71 (9th Cir.

18  2001). The claimed constitutional violation here is a due-process violation. The Fifth Amendment

19  guarantees due process in immigration proceedings, including a right to a full and fair hearing, the

20  right to an impartial adjudicator, the evaluation of each case on its merits, and protection from

21  invidious discrimination. *Id.* at 1270. A decision "violates due process if the proceeding was so

22  fundamentally unfair that the alien was prevented from reasonably presenting his case." *Id.* (cleaned

23  up). That said, a plaintiff "may not create the jurisdiction that Congress chose to remove simply by

24  cloaking an abuse of discretion in constitutional garb. To hold otherwise would allow all immigrants

25  to circumvent clear congressional intent to eliminate judicial review over discretionary decisions" by

26  "re-characterizing an alleged abuse of discretion as a 'due process' violation." *Id.* at 1171 (cleaned

27

28  [32] Opp'n – ECF No. 30 at 11; Reply – ECF No. 21 at 6.

1    up). Thus, the plaintiff must allege "at least a colorable constitutional violation. To be colorable in

2    this context, the alleged violation need not be substantial, but the claim must have some possible

3    validity. In this context, that means that the petition must allege or the record must contain at least a

4    colorable claim of a due process violation." *Id.* (cleaned up).

5         The plaintiff claims a due-process violation and legal error because USCIS impermissibly

6    considered documents from the bond hearing (such as the police reports) and ignored his factual

7    innocence. He did not receive "notice and opportunity . . . to respond to . . . extra-record evidence,"

8    and the IJ's order of removal was considered a negative equity (which contravenes 8 C.F.R. §

9    214.14(c)(1)(ii), which allows eligible aliens subject to a removal order to file for a U visa).[33] The

10   government responds that there is no colorable claim of a due-process violation because USCIS can

11   consider the A file (including police reports), and it disclaimed reliance on criminal documents

12   submitted in the bond hearing ("documents, police reports, and court documents" that "indi[ca]ted"

13   that "the indictment paperwork stated that the DNA found on the vaginal swap from the victim's

14   sexual assault matched defendant's DNA," and "the victim identified the defendant in a photo

15   lineup"). The government also asserts that USCIS limited its review to "the record of conviction" in

16   "reassess[ing the plaintiff's] guilt or innocence in his 2012 and 2013 arrests" and could consider "all

17   relevant factors" regarding the arrests and the severity of the charges. Thus, the government

18   contends, USCIS considered only "the serious nature of the charges," not "the facts underlying the

19   charges that came to light in the bond proceedings."[34]

20        USCIS can consider the A file, including any police reports in it. 8 C.F.R. § 214.14(c)(4). But

21   here, based on information in police reports that the plaintiff did not have, and without affording the

22   plaintiff an opportunity to rebut the information, USCIS concluded that the plaintiff had a pattern of

23   disregard for U.S. law and was a risk to the safety of others. As a result, it denied the U visa.[35] This

24   contravenes BIA binding precedent that in circumstances like these, a decisionmaker cannot rely on

25

26   [33] Opp'n – ECF No. 30 at 11–12.

27   [34] Reply – ECF No. 21 at 8–9 (cleaned up) (quoting 8/12/2019 Waiver Recons. Decision, Ex. D to FAC – ECF No. 23-1 at 22).

28   [35] 8/12/2019 Waiver Recons. Decision, Ex. D to FAC – ECF No. 23-1 at 22.

United States District Court
Northern District of California

1    uncorroborated police reports. *In re Arreguin De Rodriguez*. 21 I. & N. Dec. 38, 42–43 (BIA 1995).

2    It also violates the requirement that if USCIS relies on information, then the plaintiff is entitled to

3    an opportunity to rebut it before USCIS renders its decision. 8 C.F.R. § 103.2(a)(16)(i). The court

4    denies the motion to dismiss.

5        In *Arreguin*, the alien (like the plaintiff here) did not challenge her inadmissibility and instead

6    sought a waiver of the admissibility requirement so that she could obtain a U visa. The IJ denied her

7    application based on information in arrest reports, despite the government's decision to decline

8    prosecution. The BIA held that the IJ could not deny relief based on uncorroborated police reports.

9    *Arreguin*, 21 I. & N. at 42–43; *see Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 713 (6th Cir. 2004)

10   (characterizing *Arreguin*).

11       The IJ in *Arreguin* determined that the alien's arrest for alien smuggling was a negative factor,

12   despite the government's decision not to prosecute her. The alien conceded that she gave a ride to

13   other aliens but denied wrongdoing (and testified that the birth certificates and social security cards

14   mentioned in the arrest report belonged to her children and that she always carried them with her).

15   Thus, like the plaintiff here, "the applicant conceded that the arrest took place but admitted no

16   wrongdoing." The BIA gave the arrest report little weight because prosecution was declined and

17   "there was no corroboration" of the crime "from the applicant or otherwise." In reaching this

18   conclusion, it held, "just as we will not go behind a record of conviction to determine the guilt or

19   innocence of an alien, so we are hesitant to give substantial weight to an arrest report, absent a

20   conviction or corroborating evidence of the allegations contained therein." *Arreguin*, 21 I. & N. at 42.

21       Here, the plaintiff had police encounters that resulted in his arrest. Like the applicant in *Arreguin*,

22   the plaintiff did not deny the encounters and instead denied wrongdoing. Like the prosecutor in

23   *Arreguin*, the D.A. declined prosecution. The decisionmaker disclaimed reliance on the DNA

24   evidence and victim's identification, but she relied on uncorroborated information in the reports,

25   noting "the seriousness of [the plaintiff's] past actions and encounters with law enforcement." She

26   denied the application based on "the serious nature of the charges" in 2012 and 2013, the adverse

27   immigration history, and the plaintiff's "pattern of disregard for U.S. law, as well as a potential risk

28

United States District Court
Northern District of California

1    to the safety of others."[36] *Arreguin* does not hold that it is per se improper to consider an arrest report.

2    *Avila-Ramirez v. Holder*, 764 F.3d 717, 725 (7th Cir. 2014). But it is a ground for remand when an

3    agency gives significant weight to uncorroborated arrest reports. *Id.* Also, here, as in *Avila-Ramirez*,

4    the decisionmaker did not cite *Arreguin*. *Id.* (finding that "the agency failed to follow its binding

5    precedent in *Arreguin*, which it did not cite, when it gave significant weight to uncorroborated arrest

6    reports in which Avila-Ramirez denied any wrongdoing after finding him credible").

7        Moreover, the plaintiff did not have the reports at his hearings and — despite asking to respond

8    to them — was denied the opportunity to do so. A failure to give notice of derogatory information

9    and an opportunity to address it violates agency rules. 8 C.F.R. § 103.2(a)(16)(i) ("If a decision will

10   be adverse to the applicant or petitioner and is based on derogatory information considered by the

11   Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and

12   offered an opportunity to rebut the information and present information in his/her own behalf before

13   the decision is rendered" unless certain exceptions, which are inapplicable here, apply.); *Ahmed v.*

14   *Mayorkas*, 719 F. Supp. 2d 1080, 1083, 1086–87 (N.D. Cal. 2009).

15       The government did not contest this legal point and instead contended that the reports are in

16   the A file, the plaintiff had them at his bond hearing, and USCIS in any event asked for them,

17   giving notice that it wanted to consider them.[37] *Cf. Ahmed*, 719 F. Supp. 2d at 1083 (information

18   was related to terrorism). Citing *Gebhard v. Nielsen*, it contends that due process does not require

19   more. 879 F.3d 980, 988 (9th Cir. 2018).

20       *Gebhard* involved a plaintiff's conviction for committing a lewd and lascivious act on a child.

21   After he served his sentence, the plaintiff married a noncitizen and sought legal permanent

22   residence (LPR) for his wife and her three noncitizen children. 879 F.3d at 983. USCIS initially

23   approved the LPR petitions in 2006, discovered the conviction in 2009 after running an additional

24   background check, issued a notice of intent to revoke the LPR approval, and invited the plaintiff to

25   submit evidence that he posed no risk to the LPR beneficiaries. Ultimately, USCIS revoked its

26

27   _____

     [36] *Id.*

28   [37] Reply – ECF No. 31 at 11. The government made these points more explicitly at oral argument.

United States District Court
Northern District of California

1    earlier approval of the LPR petitions and denied new LPR petitions. *Id.* at 984. Because USCIS

2    reviewed the plaintiff's no-risk evidence and then revoked its LPR approval, the court "had little

3    trouble concluding that Plaintiff failed to bring a colorable claim." *Id.* at 988.

4        *Gebhard* is distinguishable. The plaintiff there was convicted of a serious crime, and USCIS

5    considered the mitigating information before revoking its LPR approval. There was no colorable

6    due-process claim. *Id.* By contrast, this case involves arrests, no prosecutions, no disclosure of the

7    police reports at the USCIS hearings, reliance on uncorroborated information in the reports, and a

8    failure to consider binding precedent. Moreover, the plaintiff's counsel at the USCIS hearing did

9    not have the police reports (and asked for an opportunity to rebut information in them), and the

10   plaintiff's counsel now (different than counsel at the USCIS hearings) still does not have the police

11   reports and said that they were not in the A file.

12       The government pointed to agency procedure to disclose the reports at the bond hearing to the

13   plaintiff himself and asserted that this satisfied due process. But the bond hearing, where the IJ

14   found that the plaintiff was not a flight risk or a danger, was five years (or more) before the waiver

15   hearings. The plaintiff has the burden of demonstrating his eligibility for the U visa. 8 C.F.R. §

16   214.14(c)(4). If USCIS relies on information, then the plaintiff is entitled to an opportunity "to rebut

17   the information and present information in his/her own behalf before the decision is rendered." 8

18   C.F.R. § 103.2(a)(16)(i); *Ahmed*, 719 F. Supp. 2d at 1083, 1086–87.

19       In sum, the petitioner contends that "he was prevented from presenting his case . . . [and] denied

20   a full and fair hearing before an impartial [decisionmaker] or otherwise denied a basic due process

21   right." *Torres-Aguilar*, 246 F.3d at 1271 (enunciating this standard for a due-process violation).

22   Unlike the petitioner in *Torres-Aguilar*, he does not contest a discretionary decision. *Id.* (challenged

23   the BIA's discretionary finding that he did not meet the requirement of extreme hardship necessary

24   for a suspension of deportation). Unlike the petitioner in *Solorzano*, who did not allege a

25   constitutional claim, the plaintiff alleged an improper consideration of evidence in contravention of

26   binding precedent and without proper notice or an opportunity to rebut it. *Cf.* 2018 WL 1811792, at

27   *4–5 (dismissing petition for lack of jurisdiction without prejudice). The plaintiff thus has pleaded

28   legal and due-process defects in the agency proceedings, and the court has jurisdiction to consider

United States District Court
Northern District of California

his claims. This means that the plaintiff plausibly pleaded claims under Rule 12(b)(6): the government contends only that its denial of the Waiver Application was discretionary and unreviewable and concedes that but for the requirement of admissibility, the plaintiff qualifies for the U visa.

# CONCLUSION

The court denies the motion. This disposes of ECF No. 25.

**IT IS SO ORDERED.**

Dated: August 27, 2021

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California